2008 OK CIV APP 5

**IRISNDT, INC. and American Home Assurance, Petitioners,**

v.

**Jim W. BROCK and The Workers' Compensation Court, Respondents.**

**No. 104,858.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 30, 2007.

---

Kevin D. Berry, Kelly M. Greenough, Perrine, McGivern, Redemann, Reid, Berry & Taylor, P.L.L.C., Tulsa, OK, for Petitioners.

Kevin B. White, Tulsa, OK, for Respondent, Jim W. Brock.

KENNETH L. BUETTNER, Judge.

¶ 1 Petitioners IRISNDT, Inc. and American Home Assurance (collectively, "Employer") seek review of an order of the Worker's Compensation Court which directed Employer to provide treatment in the form of a total knee replacement for Respondent Jim W. Brock. Employer asserts that the trial court erred in finding Brock's work-related injury was the major cause of Brock's need for a total knee replacement. The issue of major cause was relevant at the time Brock's injury was found to have arisen out of and in the course of his employment. The parties' agreed order making that finding is final and unappealable. The trial court's order directing further treatment is supported by competent evidence and we therefore sustain.

¶ 2 Brock filed his Form 3 June 13, 2006. Brock alleged a single incident injury to the right knee which occurred December 26, 2005, when he caught his foot on a desk and twisted his knee, then re-injured it in the parking lot. Brock later amended his Form 3 to allege December 20, 2005 as the date of injury. Brock sought medical treatment from December 26, 2005 and approval for surgery. Employer answered and admitted Brock suffered an injury in the course and scope of his employment.

¶ 3 The trial court issued an Order Authorizing Medical Treatment December 7, 2006.[1] The order found Brock sustained a work-related injury to the right knee December 20, 2005, with re-injury January 10, 2006. The order approved treatment and surgery by Dr. Simmons, as directed in Dr. Simmons's August 9, 2006 report and based on the January 18, 2006 MRI.

¶ 4 The trial court issued a second Order Authorizing Medical Treatment June 25, 2007, in which the trial court noted its December 2006 order finding a compensable knee injury, which "established all jurisdictional issues herein." The court directed Employer to "provide [Brock] with reasonable and necessary medical care with [Dr. Simmons], including total replacement of the right knee." Employer seeks review of the June 25, 2007 Order. We review an order of the Workers' Compensation Court to determine if it is supported by competent evidence. *Parks v. Norman Municipal Hospital,* 1984 OK 53, 684 P.2d 548.

¶ 5 The Workers' Compensation Act, as amended July 1, 2005, provides that for an injury arising out of and in the course of employment to be compensable, the employment must have been the major cause of the injury. 85 O.S.Supp.2005 § 3(13).[2] Employ-

---

1. In the June 20, 2007 hearing on Brock's request for knee replacement, the trial court indicated the December 7, 2006 order was an agreed order. Nothing in the record indicates either party sought review of the order finding the injury was compensable.

2. 85 O.S.Supp.2005 § 3 provides, in pertinent part:

er contends that the employment was not the major cause of the need for knee replacement. However, the finding that Brock's knee injury is work-related, and therefore compensable, is final. That finding necessarily included a finding on major cause, as noted by the trial court during the hearing on Brock's request for knee replacement. Employer's challenge here is to a particular type of treatment for the undisputedly compensable injury.

¶ 6 At the hearing on Brock's quest for knee replacement, Brock testified that he injured his right knee in 1989 while skiing. Dr. Holderness then diagnosed and repaired a partial tear of the ACL. Brock testified he had no problem with his knee from 1989 until 2002 when he fell in the shower and injured his right knee again. In May 2002 Dr. Griffin performed arthroscopic surgery to repair a partial tear of the lateral meniscus. Brock testified he received no further treatment for his knee from December 2002 until the December 2005 work-related injury for which he sought compensation in this case. Brock denied having knee problems between 2002 and 2005. Brock acknowledged that he weighs 365 pounds and he agreed that Dr. Griffin had recommended that he lose weight. Brock did not remember that Dr. Griffin informed Brock that he had arthritic changes in his right knee, nor did he remember Dr. Griffin found exposed bone on bone contact in Brock's knee. Brock testified that no doctor told him he needed a total knee

replacement until after his 2005 work-related injury.

¶ 7 The record indicates Dr. Simmons is the treating physician in this case. "There shall be a rebuttable presumption in favor of the treating physician's opinions on the issue of temporary disability, permanent disability, causation, apportionment, rehabilitation *or necessity of medical treatment."* 85 O.S.Supp.2005 § 17(A)(2)(a) (emphasis added). An employer is charged with providing reasonable and necessary medical treatment, including surgery, to injured employees. The trial court's determination of the necessity of medical treatment is a fact issue which we review for competent evidence. *Phillips Petroleum Co. v. Carter,* 1995 OK CIV APP 138, 914 P.2d 677, 680, *cert. denied.*

¶ 8 As noted above, to be compensable, an injury must not only arise out of and in the course of employment, but the employment must also be the major cause of the injury. However, the Workers' Compensation Act does not contain language requiring that the employment be the "major cause" of the need for a particular course of treatment for a compensable injury. Nevertheless, Dr. Simmons testified in his deposition that Brock's work-related injury was the major cause for the need for knee replacement. Dr. Simmons further testified that Brock needs total knee replacement because of his compensable injury.[3]

---

13. a. "Compensable injury" means any injury or occupational illness, causing internal or external harm to the body, which arises out of and in the course of employment if such employment was the major cause of the specific injury or illness. An injury, other than cumulative trauma, is compensable only if it is caused by a specific incident and is identifiable by time, place and occurrence unless it is otherwise defined as compensable in this title. A compensable injury must be established by objective medical evidence, as defined in this section.
b. "Compensable injury" includes heart-related or vascular injury, illness or death only if an accident or the claimant's employment is the major cause of the heart-related or vascular injury. Such injury shall be compensable only if it is demonstrated that the exertion necessary to produce the harm was extraordinary and unusual in comparison to other occupations and that the occupation was the major cause of the harm. The injury must be established by objective medical evidence, as defined in this section.

c. "Injury" or "personal injury" shall not include mental injury that is unaccompanied by physical injury, except in the case of rape which arises out of and in the course of employment.
d. "Compensable injury" shall not include the ordinary, gradual deterioration or progressive degeneration caused by the aging process, unless the employment is a major cause of the deterioration or degeneration and is supported by objective medical evidence, as defined in this section; nor shall it include injury incurred while engaging in, performing or as the result of engaging in or performing any recreational or social activities;
* * *
16. "Major cause" means the predominate cause of the resulting injury or illness;

3. Dr. Simmons testified that Brock's work-related injury was "a torn medial and a torn lateral meniscus of the knee." Dr. Simmons testified Brock also suffered from pre-existing "tricom-

¶ 9 Competent evidence supports the order for which Employer seeks review here and that order is SUSTAINED.

HANSEN, P.J., and BELL, J., concur.

partmental arthritis to the knee joint, which basically means that the articular cartilage or the covering on the end of the bone has worn through to the bone, bare bone being exposed behind the kneecap...." When asked if the pre-existing arthritis was enough by itself to require a total knee replacement, Dr. Simmons responded: "Not at that time. It significantly increased after the injury of January the 10th of '06." The testimony then indicated Dr. Simmons was unsure if Brock twisted his knee at his desk December 20, 2005 or January 10, 2006, but he agreed the knee twisting incident caused the meniscus tears which was the work-related injury:

Specifically what it did was tear the two cartilages in the knee joint. The two cartilages were, for lack of a better word, the straw that broke the camel's back allowing the two arthritic surfaces to come together. So it didn't actually aggravate the arthritis, which is the roughened end of the bone; it markedly aggravated the symptoms of the arthritis by allowing the two bones to now be rubbing against each other instead of being separated by an intact meniscus.

\* \* \*

I would say the need for the total knee replacement at this time are (sic) a result of the industrial injury. He would have eventually needed a total knee replacement as that gristle had worn down over the years. I don't know when, but he would have eventually needed that. But the thought that the meniscus was broken and allowing the bones to come together and increasing symptoms at this time is related to the industrial injury, in my opinion.

When asked if the compensable injury was the major cause for the need for knee replacement, Dr. Simmons responded:

... If he had had the twisting injury alone and did not have arthritis, he would not have needed a total knee replacement. But because he did have the twisting injury, he needed total replacement at this time. So the way I've been told to phrase it, if the patient is needing treatment at this time because of an injury, it's the major cause.